

1

2

3

4

5

6

7

8

9

10                    UNITED STATES DISTRICT COURT

11                  SOUTHERN DISTRICT OF CALIFORNIA

12

13    REDWOOD INTERFAITH HOUSING            Case No.:  24-cv-00233-AJB-JLB
      CORPORATION,
14
                     Plaintiff/Counter-Defendant,   **ORDER SUA SPONTE REMANDING**
15                                                  **FOR LACK OF SUBJECT MATTER**
      v.                                            **JURISDICTION AND DENYING AS**
16                                                  **MOOT ALL MOTIONS**
      NATIONWIDE AFFORDABLE
17    HOUSING FUND 33, LLC, et al.,
                                                    **(Doc. Nos. 58; 60; 61)**
18                   Defendants/Counterclaimants.

19

20

21         Before the Court are cross-motions for summary judgment and a motion to exclude.

22   (Doc. Nos. 58; 60; 61.) The motions are fully briefed. (Doc. Nos. 58; 60; 61; 64; 65; 68;

23   70; 74.) Also before the Court are the parties' supplemental briefs addressing whether this

24   Court has jurisdiction over this action. (Doc. Nos. 91; 92; 93; 94.) Pursuant to Local Civil

25   Rule 7.1.d.1, the Court finds these matters suitable for disposition without oral argument.

26         For the reasons set forth below, the Court *sua sponte* **REMANDS** this action to San

27   Diego Superior Court for lack of subject matter jurisdiction. Additionally, the Court

28   **DENIES AS MOOT** the cross-motions for summary judgment and motion to exclude.

I.      **BACKGROUND**

A.      **Factual Background**

In 2007, Plaintiff Redwood Villa Interfaith Housing Corporation ("Redwood") and Defendants Nationwide Affordable Housing Fund 33, LLC, and SCDC, LLC (collectively, "Nationwide"), joined together to form Redwood Villa Senior Housing Partners, L.P. (the "Partnership"), to purchase, develop, operate, and sell a low-income senior housing facility located at 3060 Redwood Street, San Diego, CA (the "Property"). (Doc. No. 58-4.)

Under the terms of the limited partnership agreement (the "Agreement"), Redwood is the sole general partner, Nationwide Affordable Housing Fund 33 is an investor limited partner, and SCDC is a special limited partner. (*Id.* at 7.[1])

The Agreement vested Redwood, as the general partner, with "the exclusive right to manage the business of the Partnership and . . . full power, authority and discretion to cause the Partnership to do any of the acts described in Section 2.4" of the Agreement. (*Id.* at 22–23.) Redwood also possesses

> a right of first refusal under [26 U.S.C. § 42(i)(7)] to either (a) purchase the Limited Partners interest in the Partnership for a price, payable in cash in full at closing, equal to the cash which would be distributed to the Limited Partners pursuant to Section 5.2.B if the Property were then sold to a third party for Fair Market Value [or] (b) purchase the Property . . . at a purchase price (as determined pursuant to [26 U.S.C. § 42(i)(7)]) equal to the sum of the outstanding debt, income taxes, and any Exit Taxes and/or expenses that will be incurred as a result of the sale by the Partnership (assuming the maximum federal, state and local income tax rate applicable to corporations).

(*Id.* at 30.) It appears that the sale of the Property or of the Partnership's interest in the Property will likely cause the Partnership to dissolve. (*Id.* at 6–7.)

As the special limited partner, SCDC may "automatically" remove Redwood as a general partner and admit itself as a replacement general partner if Redwood "has in

---

[1] Page citations refer to the pagination generated by the Case Management/Electronic Case Files system.

1    connection with the Partnership or the Property[] performed an act . . . constituting . . .

2    breach of fiduciary duty." (*Id.* at 52–54.)

3        In October 2023, Redwood notified Nationwide that it intended to purchase

4    Nationwide's interest in the Partnership at a fair market value. (Doc. No. 58-23.) After

5    receiving an appraisal of the Property's value and, in turn, the value of Nationwide's

6    interest in the Partnership, Redwood determined that it could not afford to pay the appraised

7    value for Nationwide's interest in the Partnership. (Doc. No. 58-26 at 3.) Nationwide

8    responded that "if [Redwood] is unwilling or unable to fulfill the terms outlined in the [fair

9    market value] Option for Redwood Villas, [Nationwide] intends to remain in the

10   Partnership for the foreseeable future." (*Id.* at 2.)

11       Two months later, Redwood notified Nationwide that it intended "to purchase[] all

12   of the Partnership's interest in the Property" at the 26 U.S.C. § 42(i)(7) purchase price.

13   (Doc. No. 58-28.) Nationwide rejected Redwood's offer "because Consent of [SCDC] is

14   required to sell the Property . . . . [SCDC] has not consented to the sale or other disposition

15   of the Property." (Doc. No. 58-39 at 3).

16   **B.    Procedural Background**

17       On December 29, 2023, Redwood initiated this action in San Diego Superior Court

18   to compel the Partnership to transfer the Property to Redwood. (Doc. No. 1-2.) In its

19   Complaint, Redwood named Nationwide Affordable Housing Fund 33 and SCDC as

20   defendants, and included the Partnership as a "Nominal Defendant." (*Id.* at 14–15.)

21   Redwood asserted two causes of action against Nationwide and the Partnership. First,

22   Redwood sought declaratory judgment against Nationwide and the Partnership declaring

23   that:

24   (a) [Redwood] has the exclusive authority under the [Agreement] to decide on
     behalf of the Partnership whether [the Partnership] desires or intends to sell

25   the Property;

26   (b) SCDC has no right to consent to a sale of the Property to [Redwood]

27   pursuant to the §42 [Right of First Refusal];

28

3

24-cv-00233-AJB-JLB

(c) [Redwood's] §42 [Right of First Refusal] was validly triggered and exercised, creating a binding contract obligating the Partnership to sell the Property to [Redwood] on the terms and conditions specified under Section 6.5.H of the [Agreement];

(d) [Nationwide] caused the Partnership to breach that binding contract; and

(e) [Redwood] is entitled to specific performance of that contract.

(*Id.* ¶¶ 138–55.) Second, Redwood requested judgment in its favor:

(i) finding [Nationwide] breached the [Agreement's] implied covenant of good faith and fair dealing;

(ii) finding [Nationwide] ha[s] caused the Partnership to breach the [Agreement] and [the Partnership's] obligations under the binding contract formed upon [Redwood's] valid and enforceable exercise of its §42 [Right of First Refusal];

(iii) awarding [Redwood] specific performance requiring the Partnership to convey the Property to [Redwood] pursuant to the terms and conditions of [Redwood's] §42 [Right of First Refusal], as incorporated into the [purchase sale agreement];

(iv) awarding [Redwood] damages as against [Nationwide] in an amount to be determined at trial; and

(v) granting such further relief as the Court deems just and proper.

(*Id.* ¶¶ 156–81.)

On January 4, 2024, Redwood served the Complaint on Nationwide. (*Id.* at 2.) Nationwide timely removed the action to this Court "on diversity jurisdiction grounds." (Doc. No. 1 at 3; *see generally* Doc. No. 1.) In particular, Nationwide claimed that this Court may exercise diversity jurisdiction over the action because "the Partnership is a nominal defendant, and as such, its citizenship must be disregarded for diversity jurisdiction purposes." (Doc. No. 1 at 7.) Nationwide did not assert that the action presents a federal question. (*See generally* Doc. No. 1.)

On December 5, 2024, Nationwide filed its First Amended Counterclaim, raising six causes of action against Redwood. (Doc. No. 52 ¶¶ 47–78.)

1   The parties later filed cross-motions for summary judgment, and Nationwide moved

2   to exclude an expert report submitted by Redwood. (Doc. Nos. 58; 60; 61.)

3   On September 15, 2025, the Court requested that the parties submit supplemental

4   briefing to address (1) "[w]hether the Court has diversity jurisdiction of this matter" and

5   (2) "[w]hether the Court has federal question jurisdiction of this matter." (Doc. No. 90.)

6   **II.    LEGAL STANDARD**

7   Federal courts are courts of limited jurisdiction, having subject matter jurisdiction

8   only over matters authorized by the Constitution and Congress. *See Kokkonen v. Guardian*

9   *Life Ins. Co.*, 511 U.S. 375, 377 (1994). A defendant may remove a civil action to federal

10  court only if the district court would have original jurisdiction over the action. 28 U.S.C.

11  § 1441(a). "[R]emoval statutes are strictly construed against removal." *Luther v.*

12  *Countywide Home Loans Servicing LP*, 533 F.3d 1031, 1034 (9th Cir. 2008). There is a

13  "strong presumption" against removal jurisdiction, and the party seeking removal always

14  bears the burden of establishing that removal is proper. *Gaus v. Miles, Inc.*, 980 F.2d 564,

15  566 (9th Cir. 1992). A party that fails to invoke a ground for jurisdiction in its notice of

16  removal waives any argument related to that ground. *City of Oakland v. BP PLC*, 969 F.3d

17  895, 911 n.12 (9th Cir. 2020). If there is any doubt as to the propriety of removal, federal

18  jurisdiction must be rejected. *Gaus*, 980 F.2d at 566.

19  "The federal courts are under an independent obligation to examine their own

20  jurisdiction." *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990). "If at any time

21  before final judgment it appears that the district court lacks subject matter jurisdiction, the

22  case shall be remanded." 28 U.S.C. § 1447(c).

23  **III.    DISCUSSION**

24  **A.      The Court Lacks Diversity Jurisdiction.**

25  "The district courts shall have original jurisdiction of all civil actions where the

26  matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs,

27  and is between citizens of different States." 28 U.S.C. § 1332(a)(1). This provision "applies

28

24-cv-00233-AJB-JLB

1    only to cases in which the citizenship of each plaintiff is diverse from the citizenship of

2    each defendant." *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996).

3         Redwood is not diverse from each Defendant, precluding diversity jurisdiction. A

4    "corporation shall be deemed to be a citizen of every State . . . by which it has been

5    incorporated and of the State . . . where it has its principal place of business." 28 U.S.C.

6    § 1332(c)(1). Here, Redwood is a citizen of California (Doc. Nos. 1 at 5; 1-2 ¶ 20);

7    Nationwide Affordable Housing Fund 33 is a citizen of Colorado, Ohio, and Texas (Doc.

8    Nos. 1 at 5–6; 1-2 ¶ 21); and SCDC is a citizen of Ohio and Texas (Doc. Nos. 1 at 6–7; 1-

9    2 ¶ 22). Additionally, a partnership is a citizen of all the states of which its partners are

10   citizens. *Singh v. Am. Honda Fin. Corp.*, 925 F.3d 1053, 1064 n.10 (9th Cir. 2019).

11   Accordingly, the Partnership is a citizen of California, Colorado, Ohio, and Texas. In turn,

12   Redwood is not diverse from the Partnership and the Court lacks diversity jurisdiction.

13        Nevertheless, Nationwide raises two arguments to assert that complete diversity is

14   present. (Doc. Nos. 1 at 7–10; 92 at 2–5; 93 at 2–3.) First, Nationwide contends that the

15   Partnership is merely a nominal defendant because (a) Redwood identified the Partnership

16   as a nominal defendant, (b) the Partnership lacks any adverse interest to Redwood, and

17   (c) the Partnership is not a necessary party because it has no stake in the litigation. (Doc.

18   Nos. 1 at 7–8; 92 at 2–4.) Second, Nationwide avers that Redwood fraudulently joined the

19   Partnership to prevent removal because Redwood cannot state a cause of action against the

20   Partnership. (Doc. Nos. 1 at 9–10; 92 at 4–5.) Nationwide's arguments are unavailing.

21                      **1.     The Partnership is not a nominal party.**

22        Preliminarily, a nominal party is one that has "no interest in the action" and that is

23   joined to perform a "ministerial act." *Prudential Real Estate Affiliates, Inc. v. PPR Realty,*

24   *Inc.*, 204 F.3d 867, 873 (9th Cir. 2000) (quoting 13B Charles Alan Wright, Arthur R.

25   Miller, Edward H. Cooper, Federal Practice and Procedure § 3606, at 409 & n.2 (2d ed.

26   1984)). This definition is not applicable to the Partnership.

27        Turning to Nationwide's arguments, Redwood's prior labeling of the Partnership as

28   a nominal defendant is irrelevant. Redwood does not offer any explanation for why it

1    labeled the Partnership as a nominal defendant. (*See generally* Doc. Nos. 1-2; 91; 94.) It

2    also appears that Redwood is now abandoning that labeling as Redwood points out that it

3    "pled: (1) a declaratory judgment claim against, and sought relief from, the Partnership;

4    and (2) a claim for specific performance against, and sought relief from, the Partnership."

5    (Doc. No. 94 at 2 (citing Doc. No. 1-2 ¶¶ 138–81).) Regardless, Redwood cannot consent

6    its way into federal court by mislabeling a party. *See Sullivan v. First Affiliated Sec., Inc.*,

7    813 F.2d 1368, 1374 (9th Cir. 1987).

8            Next, the Partnership possesses an interest adverse to Redwood's in this litigation.

9    As the parties recognize, it is the Partnership that owns the Property. (*See, e.g.*, Doc. Nos.

10   58-3 ¶ 5; 60-1 at 6.) If Redwood prevails, the Partnership will be stripped of the Property

11   and likely dissolved. (*See* Doc. Nos. 1-2 at 42; 58-4 at 6–7.) On the other hand, if

12   Nationwide prevails against Redwood's claims, the Partnership will retain the Property and

13   remain in existence. Insofar as Redwood seeks to take something away from the

14   Partnership, the two entities' interests are at odds.

15           Nationwide nevertheless asks the Court to turn a blind eye to this reality since

16   Redwood is the general partner, "acts on behalf of the Partnership," and "controls its

17   conduct." (Doc. No. 1 at 9; *see also* Doc. No. 92 at 4–5.) Although true, these facts do not

18   warrant disregarding the Partnership's corporate form. *Cf. Sonora Diamond Corp. v. Sup.

19   Ct.*, 83 Cal. App. 4th 523, 538 (Cal. Ct. App. 2000) ("when the corporate form is used to

20   perpetrate a fraud, circumvent a statute, or accomplish some other wrongful or inequitable

21   purpose, the courts will ignore the corporate entity").

22           The Partnership's adverse interest also means that the Partnership possesses a stake

23   in the litigation and is a necessary party. Nationwide cites *Muskegon Holdings LLC v. VP

24   LB 13 LLC*, 8:23-CV-01302-DOC-JDEx, 2023 WL 9420120 (C.D. Cal. Dec. 5, 2023), to

25   argue that even though the Partnership owns the property, the Court may nonetheless

26   "accord complete relief among the parties in the litigation without joining the partnership."

27   (Doc. No. 92 at 2–3.) Redwood also cites *Muskegon Holdings* as the basis for its decision

28   "to conserve its resources" and not seek remand. (Doc. No. 91 at 2–3.)

The parties' reliance on *Muskegon Holdings* is misplaced. There, the plaintiff sought "a declaration that [the Right of First Refusal] has not been triggered and thus cannot be exercised." 2023 WL 9420120, at *4. Such a declaration would have meant that the partnership there had no obligation to sell the property at issue. *Id.* In turn, that partnership's interests would not be impaired by the litigation. *Id.* at *5.

Redwood's claims present the reverse image. Redwood seeks a declaration that it validly exercised its right of first refusal. (Doc. No. 1-2 at 42.) According to Redwood, such a declaration would obligate the Partnership to transfer the Property to Redwood. (*Id.*) The Partnership's interests may thus be impaired by the present litigation.[2]

Moreover, excluding the Partnership from this litigation may limit Redwood's ability to obtain complete relief. Nationwide indicates that if the Partnership is removed from these proceedings and Redwood prevails, Redwood would still be able to obtain complete relief because Redwood can simply require the Partnership to transfer the Property. (*See, e.g.*, Doc. No. 92 at 4 ("Plaintiff controls the Partnership and thus controls that outcome.").) However, any decision on the merits would not be binding on the Partnership if it is removed from the proceedings. Even if Redwood prevails in that situation, SCDC may still oust Redwood from the managing general partner role, become admitted as the replacement managing general partner, and prevent the Partnership from transferring the Property to Redwood. (*See* Doc. No. 58-4 at 52–54.)[3]

This conclusion is consistent with other courts' decisions. For instance, in *King Plaza, LLC v. Allian Tax Credit Fund 40, Ltd.*, the court found that a partnership was not a nominal defendant because the plaintiff there sought an order of specific performance

---

[2] In contrast, it is Nationwide's counterclaims that are analogous to Muskegon Holdings' claims. (*Compare, e.g.*, Doc. No. 52 at 16–17 (seeking declaratory relief "that Redwood failed to exercise its [Right of First Refusal] to purchase [Nationwide's] interests in the Partnership or to purchase the Property"), *with Muskegon Holdings*, 2023 WL 9420120 at *4 ("Plaintiff seeks a declaration that Canopy's [Right of First Refusal] has not been triggered and thus cannot be exercised.").)

[3] To be clear, the Court does not endorse any such gamesmanship. The Court provides this example only to demonstrate why the resolution of Redwood's claims must also bind the Partnership.

1   that would require the partnership to sell its property. 742 F. Supp. 3d 453, 458 (D.N.J.

2   2024). *King Plaza* also noted that the partnership would be further impacted because the

3   sale of the property would lead to the partnership's dissolution. *Id.* Additionally, the *King*

4   *Plaza* court distinguished *Muskegon Holdings* because the claims before it could "have the

5   effect of liquidating and terminating the Partnership." *Id.* at 459. Similarly, the district court

6   in *Wesley Housing Development Corporation of Northern Virginia v. SunAmerica Housing*

7   *Fund 1171*, concluded that in an action that could require a partnership to sell its property

8   at a below-market price, "the Partnership is not a nominal party and the Partnership's

9   citizenship must be considered in determining whether complete diversity exists between

10   the parties." 577 F. Supp. 3d 448, 458–59 (E.D. Va. 2021).

11          In contrast, *Beneficial Pines at Warrington, LLC v. MG GTC Middle Tier II, LLC*,

12   held that a partnership could not be considered a nominal party when its judgment "would

13   neither affect any property owned by the partnership nor compel or forbid any act by the

14   partnership." No. 8:22-cv-1351-SDM-CPT, 2022 WL 17495881, at *3 (M.D. Fl. Dec. 8,

15   2022).

16          In short, the distinguishing feature that prevents the Partnership from being a

17   nominal defendant here is that the resolution of Redwood's claims may affect the

18   Partnership's property interests. *See Prudential*, 204 F.3d at 873.

19                    **2.    Redwood did not fraudulently join the Partnership as a party.**

20          The Ninth Circuit has recognized that:

21   [t]here are two ways to establish fraudulent joinder: "(1) actual fraud in the
     pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a
22   cause of action against the non-diverse party in state court." *Hunter v. Phillip*
     *Morris USA*, 582 F.3d 1039, 1044 (9th Cir. 2009) . . . . Fraudulent joinder is
23   established the second way if a defendant shows that an "individual[] joined
     in the action cannot be liable on any theory." *Ritchey v. Upjohn Drug Co.*, 139
24   F.3d 1313, 1318 (9th Cir. 1998). But "if there is a *possibility* that a state court
     would find that the complaint states a cause of action against any of the
25   resident defendants, the federal court must find that the joinder was proper
     and remand the case to the state court." *Hunter*, 582 F.3d at 1046 . . . . A
26   defendant invoking federal court diversity jurisdiction on the basis of

27

28

fraudulent joinder bears a "heavy burden" since there is a "general presumption against [finding] fraudulent joinder." *Id.* (citations omitted).

*Grancare, LLC v. Thrower by and through Mills*, 889 F.3d 543, 548 (9th Cir. 2018).

Nationwide has failed to carry this heavy burden. In its notice of removal, Nationwide asserted that "because the Partnership has no stake in the outcome of this litigation, it follows that [Redwood] has not stated, and cannot adequately state, a cause of action against it." (Doc. No. 1 at 9.) Nationwide echoes this assertion in its supplemental briefing, adding that Redwood "only requests specific performance that the Partnership sell the Property to [Redwood] pursuant to the [Right of First Refusal]. This is not a claim against the Partnership, rather a remedy conditioned on a declaration that [Redwood] validly exercised its [Right of First Refusal]." (Doc. No. 92 at 4.)

Nationwide is incorrect. As discussed above, the Partnership has a stake in this litigation—its ownership of the Property and, likely, its continued existence. And as Redwood points out, California courts have recognized requests for specific performance as claims. (Doc. No. 94 at 2 n.2 (citing *Benach v. Cnty. of Los Angeles*, 149 Cal. App. 4th 836, 846 (Cal. Ct. App. 2007)).) Consequently, "there is a possibility that a state court would find that the complaint states a cause of action against" the Partnership. *Hunter*, 582 F.3d at 1046 (citation omitted). The Court accordingly finds that Redwood did not fraudulently join the Partnership in this action to defeat diversity jurisdiction. *See Grancare*, 889 F.3d at 548.

### 3. The Court cannot maintain jurisdiction it never possessed.

Given that the Partnership has been a necessary, non-nominal party since the start of these proceedings, the Court never possessed diversity jurisdiction over this action. Redwood nevertheless suggests that "the Court should take appropriate action within its discretion to maintain diversity jurisdiction" to protect Redwood from any prejudice from restarting this litigation in state court. (Doc. No. 91 at 3.) It would be illogical for the Court to "maintain" something it never possessed. Furthermore, given that the Partnership is a necessary party to Redwood's claims, the Court cannot simply remove the Partnership to

1  establish complete diversity. *See* Fed. R. Civ. P. 19(a)(1). To the extent that remand

2  prejudices Redwood, any such prejudice is the consequence of Redwood's decision not to

3  seek remand because of *Muskegon Holdings*. (*See* Doc. No. 91 at 2–3.)

4    **B.    The Court Declines to Assert and Exercise Federal Question Jurisdiction.**

5    In the absence of diversity jurisdiction, the parties dispute whether the Court may

6  exercise federal question jurisdiction over the action. Redwood asserts that Nationwide

7  bore the burden of raising federal question jurisdiction in its removal notice, Nationwide

8  waived its ability to raise federal question jurisdiction, and the Court lacks federal question

9  jurisdiction. (Doc. Nos. 91 at 4; 94 at 3–4.) In contrast, Nationwide now asserts that federal

10 question exists because "interpreting the parties' rights and obligations under the

11 [Agreement] requires interpretation of Congress' intent in drafting [26 U.S.C. § 42]." (Doc.

12 No. 92 at 5–6.) Nationwide adds that the Court may exercise federal question jurisdiction

13 based on its *sua sponte* request for supplemental briefing on the issue. (Doc. No. 93 at 3.)

14   The Court finds that Nationwide cannot retroactively assert federal question

15 jurisdiction. Again, the party seeking removal bears the burden of establishing that removal

16 is proper. *Gaus*, 980 F.2d at 566. Any doubt regarding the propriety of removal requires

17 remand. *Id.* Here, Nationwide's notice of removal identified diversity jurisdiction as the

18 sole basis for removal. (*See generally* Doc. No. 1.) Because more than thirty days have

19 passed since service of the Complaint on January 4, 2024, Nationwide is time-barred from

20 amending its notice of removal to assert federal question jurisdiction. *See ARCO Envtl.*

21 *Remediation, LLC v. Dep't of Health and Envtl. Qual. of Mont.*, 213 F.3d 1108, 1117 (9th

22 Cir. 2000). Nationwide additionally waived its ability to assert federal question jurisdiction

23 by not raising it in the notice of removal. *Oakland*, 969 F.3d at 911 n.12. Although

24 Nationwide now asserts that it may retroactively assert federal question jurisdiction based

25 on the Court's request for supplemental briefing, Nationwide does not provide any citation

26 showing that the Court's action creates such a back door. (*See generally* Doc. No. 93.) The

27 Court is not aware of any caselaw that supports this proposition.

28

24-cv-00233-AJB-JLB

1   Under these circumstances, Nationwide's removal of this action was not proper, and

2   it is not clear that the defect is cured simply because the Court asked whether it has federal

3   question jurisdiction. Accordingly, remand is required. *Gaus*, 980 F.2d at 566.

4   **IV.    CONCLUSION**

5   The Court lacks diversity jurisdiction because the Partnership is a necessary, non-

6   nominal defendant that is not diverse from Redwood. And because it is not clear that

7   Nationwide may assert federal question jurisdiction at this late juncture, Nationwide has

8   failed to establish that removal is proper.

9   Based on the foregoing, the Court *sua sponte* **REMANDS** the action to San Diego

10  Superior Court. Further, the Court **DENIES AS MOOT** the parties' cross-motions for

11  summary judgment (Doc. Nos. 58; 60) and Nationwide's motion to exclude (Doc. No. 61).

12  **IT IS SO ORDERED.**

13  Dated:  October 9, 2025

14

Hon. Anthony J. Battaglia
United States District Judge

15

16

17

18

19

20

21

22

23

24

25

26

27

28

24-cv-00233-AJB-JLB